IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JAHIZA SHAMORI JONES, | ) | |
| | ) | |
| Petitioner, | ) | CASE NO.: 7:20CV0011 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| HAROLD CLARKE, | ) | By: Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Respondent. | ) | |

Jahiza Shamori Jones ("Jones" or "Petitioner"), a Virginia inmate proceeding *pro se*, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, challenging his 2017 convictions in Danville Circuit Court for first-degree murder, conspiracy to commit first-degree murder, use of a firearm in the commission of a violent felony, and shooting in public resulting in injury, for which he was sentenced to 34 years. The Supreme Court of Virginia considered each claim raised by Jones in his petition. Because the state court's decision was not contrary to nor a misapplication of federal law—and was not the product of unreasonable factfinding—the court will dismiss his federal habeas claims.

I. **Factual Background and Procedural History**

On July 20, 2016, Danville police officers arrested Jones (and his brother, Marteno Holmes) for conspiracy to commit second-degree murder. CCR[1] at 1. Following a preliminary hearing on September 26, 2016, the matter was certified to the grand jury. On October 24, 2016, the grand jury returned direct indictments on four charges: conspiracy to commit first-

---

[1] Citations to the Danville Circuit Court record, Record No. CR16001162, are abbreviated "CCR," using the typed page numbers in the bottom center of the page.

degree murder (in lieu of the original conspiracy charge), in violation of Virginia Code § 18.2-32; first-degree murder, in violation of Virginia Code § 18.2-32; use of a firearm in commission of a violent felony, in violation of Virginia Code § 18.2-53.1; and shooting in public resulting in injury, in violation of Virginia Code § 18.2-280. The Commonwealth promptly filed a motion for joinder of Jones's case with Holmes's case, noting that they faced the same charges and that the evidence and witnesses would be the same in both cases. CCR at 32–33. Defense counsel did not object at that time, but the court reserved to both defendants the right to return to court and request severance if review of the discovery raised any prejudice to either party. *Id.* at 58–60. Neither defendant ever requested a severance.

The case was tried before a jury on January 18 and 19, 2017, during which the following evidence was presented (as the prevailing party, the evidence is recounted in the light most favorable to the Commonwealth): Around 9:15 in the morning on July 16, 2016, Delquan Jones and his brother Solomon Jones were walking to their mother's house when Delquan heard a loud engine approaching. When he looked up, he saw a silver SUV heading towards them. The passenger in the SUV jumped out with a weapon that looked like an assault rifle, and Delquan ran to hide behind a nearby house. Delquan heard four or five gunshots, and, after the SUV had left the scene, he returned to the road and discovered that his brother had been shot to death. *Id.* at 530–540.

Delquan testified that he recognized the silver SUV, which had North Carolina license plates, as one regularly driven by Jones. He knew Jones and Holmes before July 16 because his brother Solomon had previously been in a relationship with Jones's and Holmes's mother. As soon as the SUV stopped and the passenger with the gun jumped out, Delquan recognized

the driver as Jones and the passenger as Holmes. When the prosecution asked Delquan to identify Jones in court, the following took place:

> Q. Do you see the driver of that vehicle here in the courtroom today?
>
> A. No.
>
> Q. You don't see Jahiza Jones?
>
> A. Naw.
>
> Q. Nowhere in the courtroom?
>
>> [Defense counsel]: Objection, asked and answered.
>
> A. Oh, yeah . . . yes, I do, right there.
>
> Q. Okay and would you indicate who is seated next to him . . . the gentleman in . . . in the gray suit or the gentleman in the brown suit?
>
> A. One of them two?
>
> Q. Yes. Of course, point to which one . . .
>
>> [Defense counsel]: Objection . . . suggestive, Judge, she's asked the question, let him answer.
>
> Q. . . . point to which one is Jahiza Jones.
>
> A. Right there.

*Id.* at 532–533. The Commonwealth asked the record to reflect that Delquan had identified defendant Jones, and the court stated, "so noted." *Id.* at 533.

Because Delquan was so upset after his brother was shot, he did not talk to the police until several days later. *Id.* His mother, however, provided police with the description of the SUV with North Carolina tags and the names of the two people Delquan had seen. Based on

- 3 -

the information provided by Delquan's mother, police went to Jones's home on July 16; neither Jones nor Holmes were there, but their mother and another man were. Later that evening, detectives went back by the house and saw the silver SUV parked across the street from the home. Assuming that Jones might be home, they knocked on the door but got no answer. They called Jones's mother—who was not at the home—and she confirmed that Jones was in the house. Jones refused to come out of the house, however, leading to a standoff with police. Jones finally came out, and the officers executed a search warrant for the car and the house. In addition to other items found inside the home, detectives recovered a shell casing from the mantle, two bullet cartridges from a tackle box, and a partially filled box of federal ammunition in a bedroom. *Id.* at 596–606.

Police questioned co-defendant Holmes at the police station on July 18, 2016. During the interrogation, Holmes admitted owning the tackle box in which two bullet cartridges were found. At one point, officers suggested that Holmes might have fired at Solomon in self-defense, to which Holmes replied, "How could he pull a gun on us if you all didn't find a gun at the scene?" *Id.* at 623–624. Holmes also asked how many times Solomon had been shot *in the back*, even though the officers never disclosed that Solomon had been shot in the back. *Id.* at 591–592. At the request of Jones's counsel, the court instructed jurors that the statements made by Holmes could not be considered as evidence against Jones. *Id.* at 624.

Finally, the Commonwealth introduced evidence that police responded to the home of Jones's and Holmes's mother at 3:30 a.m. on July 16 (just a few hours before the homicide) because of complaints of shots fired into the home. Several bullet casings were recovered in the walls and outside the house. *Id.* at 611–614. Similarly, police had responded to the home

- 4 -

of Solomon, Delquan, and their mother four days earlier, because of gunshots fired into that home. Again, shell casings were recovered. *Id.* at 641–642. Wendy Gibson, a firearms and tools analyst at the Virginia Department of Forensic Science, testified, based upon her examination of the casings from all three scenes—the shooting into Jones's mother's home, the shooting into Delquan's mother's home, and the homicide scene—the same firearm had fired all casings. She further identified the casings as Federal Luger 9mm caliber ammunition, the same brand found in the partially filled box in Jones's home. *Id.* at 648–659.

At the conclusion of the case, counsel moved to strike the evidence against Jones, arguing that the sole evidence connecting Jones to the crime was the testimony of Delquan, which was not credible since he was unable to identify Jones twice before identifying him after leading, suggestive questions from the prosecution. The trial court overruled the motion, finding that credibility of the witnesses was a matter for the jury to decide, as was the weight to be given to the evidence. After deliberating, the jury returned a verdict of guilty against both Jones and Holmes. Following the sentencing phase of the trial, the jury recommended sentences for Jones of 20 years for first-degree murder, 10 years for conspiracy to commit first-degree murder, three years for use of a firearm in felony, and one year for shooting in a public place; for Holmes, the jury recommended life plus 20 years. *Id.* at 780–781.

On March 1, 2017, following consideration of a presentence report, the court imposed the sentence recommended by the jury for Jones, plus two years of post-release supervision. The court noted that the sentence recommended by the jury was substantially lower than the guidelines recommendation, a range of 42.5 years to 70 years, 10 months. *Id.* at 421. The sentencing order was entered on March 17, 2017.

Jones appealed his conviction to the Court of Appeals of Virginia, arguing that the trial court erred in denying the motion to strike and refusing to find Delquan's testimony not credible as a matter of law. The issue was raised by counsel in a brief filed pursuant to *Anders v. California*, 386 U.S. 738, 744 (1967). Jones supplemented with an additional error, alleging that his trial should have been severed from Holmes's trial. By opinion entered December 13, 2017, the court denied Jones's appeal as frivolous and granted his counsel's motion to withdraw. The court noted that matters of credibility were properly submitted to the jury and, accordingly, the evidence was sufficient to support the jury's verdict. Further, because Jones had not objected to joinder of his trial with Holmes and had not filed a motion to sever, the issue was procedurally defaulted and would not be considered on appeal. *Id.* at 815–820. Jones did not appeal further to the Supreme Court of Virginia.

On October 17, 2018, Jones filed a petition for habeas corpus in the Supreme Court of Virginia, raising three claims of ineffective assistance of counsel, the same claims raised in the current § 2254 petition. The court dismissed his petition on June 20, 2019, and denied his petition for rehearing on October 10, 2019. *Jones v. Clarke*, Record No. 181335, op. (Va. June 20, 2019), *reh'g denied* (Oct. 10, 2019).

Jones timely filed the current § 2254 petition in this court on January 6, 2020, raising the following issues:

1. Ineffective assistance of counsel in failing to move to sever Jones's trial from Holmes's trial;

2. Ineffective assistance of counsel in failing to move to strike Delquan's suggestive identification; and

    3.  Ineffective assistance of counsel, tantamount to denial of right to counsel on appeal, for filing an *Anders* brief rather than asking the court to appoint new counsel for Jones.

In moving to dismiss Jones' petition, respondent argues that the petition is fatally flawed, because it is not signed and verified as required by 28 U.S.C. § 2242 and that the state court's decision was reasonable and should be affirmed.

## II. Standard of Review and Limitations on Federal Habeas

A federal court may grant a petitioner habeas relief from a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Federal courts reviewing constitutional claims adjudicated on the merits in state court may grant relief on such a claim only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). A federal district court reviewing a § 2254(a) petition is also limited by several other considerations, including timeliness, exhaustion and its separate but related doctrines of procedural default and independent and adequate state-law grounds, and—of course—the requirements of the statute itself.

As the respondent concedes, Jones's petition is timely, and he exhausted the issues in his state habeas proceeding. The only remaining preliminary consideration is whether the court must dismiss the petition because it was not verified when filed. Upon receiving the respondent's motion to dismiss, and within the time limit for replying to the motion, Jones filed a signed statement declaring "under penalty of perjury that the facts contained in the said

petition are true and correct." Pet's V.S., ECF No 15. Accordingly, the court will deem that Jones has cured the initial defect in his petition. *See Aldarondo v. Supreme Court of Puerto Rico,* 369 F. Supp. 1173, 1175–76 (D. P.R. 1974). The court will therefore analyze the claims using the required standard of review for federal habeas.

### III. Analysis of Claims

Jones's claims allege ineffective assistance of counsel. To prevail on a claim of constitutional ineffective assistance of counsel, a petitioner must show that: (1) counsel's performance was so deficient that he was not functioning as counsel guaranteed by the Sixth Amendment; and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Petitioner must establish both prongs of this deferential test. Combined with the standard for merits review under § 2254(d), which is highly deferential to decisions of the state court, federal habeas review of a *Strickland* claim is "doubly deferential"; federal courts are to give the benefit of the doubt to both the state court and the defense attorney. *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016).

To establish deficient performance—the first prong of the *Strickland* test—a petitioner must demonstrate that counsel's performance fell below "an objective standard of reasonableness . . . under prevailing professional norms." *Strickland*, 466 U.S. at 688. The reviewing court must not rely upon the "distorting effects of hindsight," but must presume that counsel's decisions and actions fell within the wide range of reasonable strategy decisions. *Id.* at 689–90. A reviewing court must presume that counsel exercised reasonable judgment in making decisions. *Id.* at 690. To establish prejudice under *Strickland*, the petitioner must show that there was "a reasonable probability that the outcome of the proceedings would have been

different," which means "a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

On federal habeas review, the question is not whether "a federal court believes the state court's determination under the *Strickland* standard was incorrect, but whether the determination was *unreasonable*, a substantially higher threshold." *Knowles v. Mirazavance*, 556 U.S. 111, 123 (2009) (emphasis added). "If this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). "[S]urmounting *Strickland*'s high bar is never an easy task," but "establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 562 U.S. at 105. Applying this high standard, the court will review each of Jones's claims of ineffective assistance.

1. Failure to Sever Co-Defendant's Trial

Under Virginia Code § 19.2-262.1, if the Commonwealth establishes "good cause" for joinder, the trial court "shall" order a joint trial, unless a defendant can show that a joint trial will result in prejudice. The state court has noted that this creates "a presumption in favor of joint trials" once the Commonwealth has shown "good cause" for the joinder. *Allen v. Commonwealth*, 712 S.E.2d 748, 750 (Va. Ct. App. 2011). The prejudice that a defendant must demonstrate is an "actual prejudice" to a specific trial right, such as the right to confront and cross-examine a witness, or when joinder would prevent the jury from making a reliable determination of guilt or innocence. *Id.* at 750–51.

In rejecting this claim, the state court held that Jones failed to identify any basis upon which counsel could or should have objected to the joinder. Although Jones claims that

Holmes made statements that were prejudicial and implicated Jones, the court noted Jones had not identified any such statements, and that review of the record did not reveal any such statements introduced at trial. *Jones*, Record No. 181335, op. at 3. Indeed, only two utterances from Holmes were mentioned during the trial, as mentioned in the factual summary of the case above. First, Holmes asked investigators, before leaving the interview room, how many times Solomon had been shot in the back. CCR at 591–92. Second, when the detective suggested that Holmes might have been shooting in self-defense if Solomon had pulled a gun on him, Holmes asked how Solomon could have pulled a gun on them if they did not find a gun at the scene. *Id.* at 623–24. The court also gave a cautionary instruction to the jury that Holmes's statements could be considered against Holmes, but not Jones. Whatever inferences one might draw from these statements against Holmes, this court cannot say that the state court was unreasonable in determining that these statements were not unduly prejudicial to Jones.

Nor is the fact that the case against Holmes was stronger—or that Jones might be found "vicariously liable" because he was sitting next to Holmes at trial—sufficient to constitute actual prejudice. *Allen*, 712 S.E. 2d at 751. Even if separate trials might have provided a better chance of acquittal for Jones, that is not the kind of prejudice that entitles a defendant to severance. *Id.* Because there was no actual prejudice to Jones from the joinder, much less any reason for counsel to anticipate a serious risk of such actual prejudice, the state court's determination that counsel's performance was not deficient is reasonable. Likewise, because there was no actual prejudice to Jones, he has failed to establish the prejudice prong of *Strickland*. This claim must be dismissed.

2. <u>Failure to Move to Strike the Suggestive Identification</u>

Jones admits that his attorney objected twice to the Commonwealth's continued questioning of Delquan to identify Jones. Counsel first objected, "Asked and answered," after Delquan twice stated that he did not see Jones in the courtroom; he then objected to the suggestive procedure when the Commonwealth asked whether Jones was sitting next to the person in the gray suit or the brown suit. CCR at 532–533. The state court opined that counsel reasonably could have assumed that further objection was pointless. Such a determination is not unreasonable, particularly in light of the fact that the trial judge allowed the record to reflect that Delquan had positively identified Jones.

The state court also held that counsel may have made a reasonable strategic choice to argue that Delquan's testimony was not credible rather than pursuing a motion to strike that was unlikely to be successful. Counsel's performance is not deficient when he fails to make a futile motion. *Moody v. Polk*, 408 F.3d 141, 151 (4th Cir. 2005). Nor are courts to rely on hindsight when evaluating counsel's performance. The state court's factual and legal determinations are not unreasonable and, therefore, this court will dismiss this claim.

3. <u>Ineffective Assistance/Denial of Appellate Counsel</u>

Jones contends he was denied the effective assistance of counsel because counsel failed to seek appoint of new appellate counsel to perfect his appeal the Supreme Court of Virginia after his unsuccessful appeal to the Court of Appeals of Virginia. The court found that counsel's performance was not defective because counsel properly noted an appeal to the Court of Appeals, filed an *Anders* brief challenging the sufficiency of the evidence to support the conviction, and moved to withdraw. The Court of Appeals gave Jones time to file a

supplemental brief of his own, which he did. Thereafter, the court reviewed the record, found the appeal to be wholly frivolous, and granted counsel's motion to withdraw. The court further notified Jones that he was representing himself from that point forward. The record fully supports this factual determination of the events in this case.

Further, the state court's decision properly applies existing federal law. Recognizing the right of an indigent client to have counsel conscientiously examine the entire record to determine if there are arguable grounds for appeal, and simultaneously recognizing an attorney's ethical obligation not to file frivolous pleadings, the Supreme Court in *Anders* recommended the very procedure followed in this case. *Anders*, 386 U.S. at 744. Once the Court of Appeals of Virginia reviewed the record and determined that the appeal was frivolous, Jones no longer had the right to counsel. *Smith v. Robbins,* 528 U.S. 259, 278 (2000) (holding that the right to appeal "does not include the right to bring a frivolous appeal and, concomitantly, does not include the right to counsel for bringing a frivolous appeal."). Further, an indigent defendant is not constitutionally entitled to counsel on second or discretionary appeals, such as the appeal from the Court of Appeals to the Supreme Court of Virginia. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). A defendant "who has his appeal dismissed because it is frivolous has not been deprived of 'a fair opportunity' to bring his appeal." *Smith*, 528 U.S. at 278; *Evitts*, 469 U.S. at 405. Nor has he been denied the constitutional right to counsel when counsel has properly complied with *Anders*.

To establish that counsel was ineffective because of filing an *Anders* brief, Jones would have to establish both deficient performance and prejudice under *Strickland*. He can only do so if he presents a non-frivolous issue that counsel unreasonably failed to develop. Otherwise,

he cannot prove prejudice. *See, e.g., United States v. Davis,* 508 F.3d 461, 463–64 (8th Cir. 2007); *Simmons v. Wainwright*, 710 F.2d 796, 797 (11th Cir. 1983); *Garner v. Clarke*, No. 7:12-cv-00340, 2012 WL 6719448, at *2 (W.D. Va. Dec. 26, 2012). The Court of Appeals found the appeal to be wholly frivolous, and Jones has not identified any issues that counsel could or should have developed.

Because the state court's habeas decision was a reasonable determination of facts and a reasonable, appropriate application of federal law, the court will dismiss this claim.

## IV.

For the reasons discussed above, the court will grant the respondent's motion to dismiss.

Further, when issuing a final order adverse to a § 2254 petitioner, the court must issue or deny a certificate of appealability. Fed. R. Gov. § 2254 Cases 11(a). A certificate of appealability may only issue if the movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The movant must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003); *Slack v. McDaniel*, 529 U.S. 73, 483–84 (2000). Jones does not meet this exacting standard.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to all counsel of record.

**ENTERED** this 30th day of April, 2021.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE